# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Submitted: October 2, 2012                    Decided: June 19, 2013)

Docket No. 12-1252-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HUGO CRUZ, on behalf of himself and all others similarly situated,

        Plaintiff-Appellant,

        v.

FXDIRECTDEALER, LLC (FXDD),

        Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 19, 2013

Before: NEWMAN, LYNCH, and LOHIER, Circuit Judges.

    Appeal from a judgment of the United States District Court for the Southern District of New York (Crotty, J.) dismissing plaintiff's complaint for failure to state a claim. We conclude that the District Court did not err in dismissing plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act or his claim for breach of the implied covenant of good faith and fair dealing. We also conclude, however, that plaintiff has statutory standing to sue under New York General Business Law §§ 349 and 350, and that he sufficiently alleged that FXDirectDealer breached the parties' contract by failing to use its "best efforts" to timely execute trade orders. AFFIRMED in part and VACATED and REMANDED in part.

                              Damien H. Prosser, Morgan & Morgan, P.A., Orlando, FL; Paul A. Batista, Paul A. Batista, P.C., New York, NY, for Plaintiff-Appellant.

1

|   |   |
|---|---|
| 1 | Jeffrey R. Burke, Micol O. Sordina, Winston & |
| 2 | Strawn LLP, New York, NY, for Defendant- |
| 3 | Appellee. |

LOHIER, Circuit Judge:

Hugo Cruz appeals from a judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, Judge), dismissing his amended complaint. On appeal, Cruz argues that the amended complaint's allegations that FXDirectDealer, LLC ("FXDD") engaged in dishonest and deceptive practices in managing its online foreign exchange trading platform are sufficient to state a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and New York General Business Law §§ 349(h) and 350, and also for breach of contract and of the implied covenant of good faith and fair dealing. For the following reasons, we affirm the District Court's dismissal of Cruz's RICO claim and his claim for breach of the implied covenant of good faith and fair dealing, but we vacate the judgment of the District Court with respect to Cruz's New York General Business Law and breach of contract claims.

**BACKGROUND**

The amended complaint alleges the following facts, which we assume to be true and construe in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678-80 (2009); Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 708, 715 (2d Cir. 2011).

Headquartered in New York City, FXDD provides online foreign currency exchange ("forex") trading and related services to its customers. The forex market operates outside of a regulated exchange and without a central marketplace. Retail

1    brokers such as FXDD help provide individual investors with access to the market and
2    often operate online.  As market makers, they create their own market and set the prices
3    they offer to their customers.  In addition to facilitating trading by customers, FXDD buys
4    and sells currency for its own account, and may act as a counterparty in customer
5    transactions.
6         To open an account with FXDD and trade on its online forex platforms, customers
7    must sign the FXDD Customer Agreement (the "Agreement").  The Agreement warns
8    that, "due to market conditions or other circumstances, FXDD may be unable to execute
9    [a customer's] Order at the Market or specified level and the Customer agrees that FXDD
10   will bear no liability for failure to execute such orders."  The Agreement also provides,
11   however, that "all Market Orders and non-Market Orders . . . are accepted by FXDD and
12   undertaken on a '*best-efforts basis*,'" and when FXDD is unable to execute an order at the
13   market or specified level, "orders will be executed on a 'best-efforts basis . . . .'"  J.A. 67
14   (italics in original).  In addition, the Agreement states, "FXDD makes no warranty
15   expressed or implied; that *Bid and Ask Prices* shown represent prevailing bid and ask
16   prices in the interbank market."
17        Several of FXDD's promotional, marketing, and advertising materials have
18   represented FXDD's trading practices without disclosing the actual risks of participating
19   in FXDD's forex market.  For example, one 2005 advertisement on FXDD's website
20   stated that FXDD "Does Not Trade Against Their Clients, but Facilitates Trade Via
21   Transparent Real-Time Bid/Offer Pricing," while a 2007 advertisement represented that
22   "[m]arket orders are filled instantaneously at the rate you request, with no manual dealer
23   intervention or slippage."

3

Contrary to the representations in these materials and the Agreement, FXDD engages in several undisclosed practices that the amended complaint characterizes as dishonest or deceptive, including: (1) rerouting profitable customer trading activity to a "slow server," which delays trades and allows FXDD to "hijack" customer profits by buying and selling in the time between a customer's order and trade execution; (2) refusing to execute profitable customer trade orders by generating false error messages; (3) creating false short-term price spikes to trigger a customer's stop order for a given trade; and (4) manipulating prices so that the change in price between the time the price is quoted and a market order is placed generally favors FXDD over its customers. FXDD undertakes these practices both manually and through automated functions.

Cruz, a Virginia resident, is a former FXDD customer who signed the Agreement in 2006 and lost $281,170.24 during two years of trading on the FXDD platform. Cruz seeks to represent a proposed class of persons in the United States who, from January 1, 2005 to the present, contracted with FXDD to trade on its trading platforms and whose accounts were subject to FXDD's allegedly dishonest trade practices.

The District Court granted FXDD's motion to dismiss the amended complaint in toto. With respect to the RICO count, the court concluded that the amended complaint failed to allege predicate acts of mail and wire fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure because it did not explain why the Agreement and marketing materials were misleading. The District Court also determined that the complaint failed to allege a RICO enterprise distinct from both the alleged pattern of racketeering activity and the RICO "person" who engaged in deceptive conduct. As for the New York General Business Law claims, the court found that Cruz lacked

1  statutory standing because he lived in Virginia and had not alleged that FXDD's

2  dishonest practices occurred, or that his trades were executed, in New York.  Separately,

3  the District Court dismissed Cruz's breach of contract claim on the grounds that the

4  Agreement disclosed all the relevant risks of using FXDD's platform and that FXDD had

5  qualified its obligation to use "best-efforts" to execute orders by warning that it might be

6  unable to do so.  Finally, the District Court dismissed the remaining breach of the implied

7  covenant of good faith and fair dealing claim as largely redundant of the breach of

8  contract claim.

9  **DISCUSSION**

10  "We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) de

11  novo." Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595

12  F.3d 86, 91 (2d Cir. 2010).  "To survive a motion to dismiss, a complaint must contain

13  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

14  face." Iqbal, 556 U.S. at 678 (quotation marks omitted).

15  A. Civil RICO Claim

16  "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO

17  statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was

18  caused by the violation of Section 1962."[1] DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir.

19  2001) (quotation marks omitted).  To establish a violation of § 1962(c), in turn, a plaintiff

---

[1] 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

1   must show that a person engaged in "(1) conduct (2) of an enterprise (3) through a pattern

2   (4) of racketeering activity." Id. at 306 (quotation marks omitted).

3   "[U]nder the so-called 'distinctness' requirement, . . . a plaintiff must 'allege . . .

4   the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not

5   simply the same "person" referred to by a different name.'" City of New York v.

6   Smokes-Spirits.com, Inc., 541 F.3d 425, 438 n.15 (2d Cir. 2008) (quoting Cedric Kushner

7   Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001)), rev'd on other grounds sub nom.

8   Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1 (2010). As we have long

9   recognized, the plain language and purpose of the statute contemplate that a person

10  violates the statute by conducting an enterprise through a pattern of criminality. It thus

11  follows that a corporate person cannot violate the statute by corrupting itself. See Bennett

12  v. U.S. Trust Co. of New York, 770 F.2d 308, 315 (2d Cir. 1985). "A 'person' is defined

13  as 'any individual or entity capable of holding a legal or beneficial interest in property,'"

14  id. at 447 (quoting 18 U.S.C. § 1961(3)), while an "'enterprise' is defined as 'any

15  individual, partnership, corporation, association, or other legal entity, and any union or

16  group of individuals associated in fact although not a legal entity,'" id. (quoting 18 U.S.C.

17  § 1961(4)). "[F]or an association of individuals to constitute an enterprise, the

18  individuals must share a common purpose to engage in a particular fraudulent course of

19  conduct and work together to achieve such purposes." First Capital Asset Mgmt., Inc. v.

20  Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) (quotation marks omitted).

21  We agree with the District Court that Cruz's RICO claim fails because the

22  amended complaint does not allege a continuing RICO enterprise distinct from the RICO

23  "person." Accordingly, we do not address whether the amended complaint pleaded mail

and wire fraud as predicate acts of racketeering activity with sufficient particularity[2] or pleaded a RICO enterprise distinct from the alleged pattern of racketeering activity.

The amended complaint alleges that FXDD is a RICO "person" that conducts the deceptive practices of an association of individuals dubbed the "FXDD Fraud Enterprise." The FXDD Fraud Enterprise is alleged to consist of the following: FXDD itself; Tradition (North America) Inc. ("Tradition"), FXDD's parent company; Advanced Technologies Group, Ltd. ("ATG"), a former equity stakeholder in FXDD; FXDD's chief operating officer; FXDD's managing director and corporate counsel; software companies that develop and sell FXDD's software; software companies and programmers who assisted FXDD in the development of its trading platforms; and "introducing brokers" who receive commissions from FXDD for educating consumers about forex trading.

The amended complaint alleges merely that the members of the enterprise "associated together for the common purpose of employing the multiple deceptive, abusive and fraudulent acts described in" the amended complaint and that "[t]he overarching purpose of the FXDD Fraud Enterprise is for each of its members to profit from customers opening Live Accounts with Defendant." As an initial matter, the amended complaint contains no specific factual allegation about the intent of ATG or of the software companies, and it affirmatively alleges that the introducing brokers generally were unaware of FXDD's deceptive practices. Thus, ATG, the software companies, and the introducing brokers are not plausibly alleged to "share a common purpose to engage

---

[2] "On a motion to dismiss a RICO claim, [plaintiff's] allegations must also satisfy the requirement that, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013) (quoting Fed. R. Civ. P. 9(b)).

7

in a particular fraudulent course of conduct," First Capital Asset Mgmt., 385 F.3d at 174 (quotation marks omitted), and were properly excluded from the alleged RICO enterprise.

We turn, then, to the remaining members of the alleged enterprise – FXDD, Tradition, corporate counsel, and the chief operating officer. The amended complaint alleges that FXDD's corporate counsel and its chief operating officer carry on the regular affairs of FXDD, such as day-to-day financial operations, including the "implementation and supervision of deceptive trading practices." We have long since rejected the idea that a RICO enterprise may consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant," Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994), and we see no reason to revisit that issue here. The requirement of distinctness cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees.

Excluding these officers leaves us with Tradition and FXDD. We have held that corporations that are legally separate but "operate within a unified corporate structure" and "guided by a single corporate consciousness" cannot be both the "enterprise" and the "person" under § 1962(c). Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1998); see Cullen v. Margiotta, 811 F.2d 698, 729-30 (2d Cir. 1987) ("[A] solitary entity cannot . . . simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise,'" but may be "one of a number of members of the RICO 'enterprise.'"), overruled on other grounds, Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987). FXDD and Tradition are alleged to operate as part of a single, unified corporate structure

8

and are, as such, not sufficiently distinct to demonstrate the existence of a RICO enterprise. Finally and obviously, neither Tradition nor FXDD standing alone can constitute an enterprise as an "association in fact." Accordingly, the District Court did not err when it concluded that Cruz's amended complaint failed to allege a RICO enterprise distinct from FXDD.[3]

B. New York General Business Law Claims

Cruz also claims that FXDD's allegedly deceptive practices violate sections 349 and 350 of the New York General Business Law. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" and provides a cause of action to "any person who has been injured" by a violation of the section. N.Y. Gen. Bus. Law § 349(a), (h). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." N.Y. Gen. Bus. Law § 350. The District Court held that Cruz lacked statutory standing to bring these claims because he failed to plead that the deceptive practices or relevant trading occurred in New York. We conclude that the complaint alleges a sufficient nexus between Cruz's transactions with FXDD and New York to fall within the territorial reach of these two provisions of the New York General Business Law.

---

[3] We need not – and do not – address whether the Supreme Court's decision in Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001), would permit a complaint naming FXDD as the "person" and Tradition alone as the "enterprise" to go forward. In contrast with Cedric Kushner Promotions, the amended complaint here does not allege a single corporate enterprise but rather the "less natural" scenario of "a corporation . . . 'associated with' [an] oddly constructed entity" that includes the corporation. Id. at 164. See also David B. Smith & Terrance G. Reed, Civil RICO ¶ 3.07 at 3-85 (2013) ("Most courts have recognized that the non-identity requirement would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with . . . affiliated entities acting on its behalf." (quotation marks omitted)).

9

1   The New York Court of Appeals in <u>Goshen v. Mutual Life Insurance Company of</u>

2 <u>New York</u> appears to have interpreted the limiting phrase "in this state" in sections 349(a)

3 and 350 to require that "the transaction in which the consumer is deceived . . . occur in

4 New York." <u>Goshen v. Mut. Life Ins. Co. of N.Y.</u>, 98 N.Y.2d 314, 324 & n.1 (2002). As

5 we explain below, we recognize that a split of authority has developed subsequent to

6 <u>Goshen</u> about the appropriate territorial test to employ under sections 349 and 350: a

7 "transaction-based" test on the one hand, or, on the other hand, a test premised on where

8 the victim is deceived, regardless of where the transaction occurs. Mindful of that split,

9 and mindful too that the two tests are not mutually exclusive, we think the appropriate test

10 in this case is to focus on the location of the transaction, and in particular the strength of

11 New York's connection to the allegedly deceptive transaction, rather than "on the

12 residency of the parties." <u>Id.</u> at 325. This accords with <u>Goshen</u>'s admonition that section

13 349 was not "intended to function as a per se bar to out-of-state plaintiffs' claims of

14 deceptive acts leading to transactions within the state." <u>Id.</u>

15   Our approach also accords with <u>Goshen</u> more generally. In the first of two cases

16 consolidated for review in <u>Goshen</u>, a Florida resident who purchased an insurance policy

17 through one of the defendant's representatives in Florida and who paid his premiums in

18 Florida nonetheless claimed that the deceptive insurance scheme occurred in New York

19 because the defendant was there. The second consolidated case involved a mix of

20 plaintiffs – some New York residents, some not – who alleged that Bell Atlantic had

21 fraudulently advertised its digital subscriber line service on web and print media. The

22 primary connection to New York in both cases was the defendant's principal place of

23 business. In each case, however, the New York Court of Appeals rejected the section 349

10

claims of the out-of-state plaintiffs because they had not alleged that the deceptive transactions themselves occurred in New York. Id. at 326.

Subsequently, the Appellate Division, Third Department asserted that "the interests of New York were implicated when [the defendant] used a New York address to send and receive [misleading] correspondence related to [a] telemarketing scheme." People v. Telehublink Corp., 756 N.Y.S.2d 285, 289 (3d Dep't 2003). As a result, the court determined that New York State could file a section 349 claim on behalf of out-of-state victims of the scheme. Id. at 288-89. More recently, the Third Department confirmed that "General Business Law § 349 requires the deceptive transaction to have occurred in New York." Morrissey v. Nextel Partners, Inc., 895 N.Y.S.2d 580, 587 (3d Dep't 2010) (citing Goshen, 98 N.Y.2d at 325).

By contrast, in Meachum v. Outdoor World Corp., 652 N.Y.S.2d 749 (2d Dep't 1997), the Appellate Division, Second Department held that defrauded plaintiffs who had contracted with the defendants in Pennsylvania and who acknowledged that much of the defendants' fraudulent activity occurred in Pennsylvania nevertheless had pleaded a sufficient New York connection to have a valid claim under section 349. The court pointed out that the defendants allegedly engaged in deceptive conduct in New York because they mailed "misleading literature to New York residents." Id. at 750.

As noted above, we recognize that two divergent lines of decisions have developed since Goshen regarding the proper territorial analysis under section 349. The first line of decisions derives from a statement in Goshen that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." 98 N.Y.2d at 325. Those decisions focus on where the deception of the plaintiff occurs and require, for example,

11

that a plaintiff actually view a deceptive statement while in New York.  See, e.g., Kaufman v. Sirius XM Radio, Inc., 474 F. App'x 5 (2d Cir. 2012).  The second line of cases appears to be premised on the assertion in Goshen that "the transaction in which the consumer is deceived must occur in New York."  98 N.Y.2d at 324.  These cases focus on where the underlying deceptive "transaction" takes place, regardless of the plaintiff's location or where the plaintiff is deceived.  See Morrissey, 895 N.Y.S.2d at 587; Gotlin v. Lederman, 483 F. App'x 583, 588 n.2 (2d Cir. 2012).  Although it is a somewhat close call, our reading of Goshen and the cases construing it leads us to conclude that a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349.[4]

Using that measure, the case before us clearly involves a series of allegedly deceptive transactions that occurred in New York and implicate the interests of New York.  FXDD is paid in New York and refuses to disburse funds from customer accounts until it receives a "Funds Redemption Form" at its New York office.  FXDD requires that all customer communications, including the Agreement and objections to trades, be sent to its New York office.  The Agreement specifies that New York law governs all disputes between Cruz and FXDD; indeed, it provides that all suits relating to the Agreement are to be adjudicated in state or federal courts located in New York.  Based on these various alleged ties between the customer transactions and New York, we are persuaded that, at this stage, "some part of the underlying transaction . . . occur[red] in New York State,"

---

[4] In reaching this conclusion, we do not foreclose the possibility that the location of the deception may also serve to confer statutory standing under section 349.

giving Cruz statutory standing to sue for deceptive practices and false advertising under sections 349 and 350. Mountz v. Global Vision Prods., Inc., 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003).

C. Breach of Contract Claim

Cruz claims that FXDD breached the Agreement by failing to use its "best efforts" to execute customer trade orders.[5] FXDD responds that Cruz's breach of contract claim fails because the Agreement warns that FXDD may be unable to execute orders at the customer-entered price and bears no liability for failing to do so. In dismissing the breach of contract claim, the District Court adopted FXDD's view. A principal issue on appeal, therefore, is whether the Agreement limits the scope of FXDD's obligation to use its "best efforts" to execute customer orders in the way that FXDD urges. Based on the clear language of the Agreement, we hold that it does not.

Over thirty years ago, Judge Friendly wrote that New York law on "best efforts" clauses is "far from clear," but that certain "cases suggest that a 'best efforts' clause imposes" at least "an obligation to act with good faith in light of one's own capabilities." Bloor v. Falstaff Brewing Corp., 601 F.2d 609, 613 n.7 (2d Cir. 1979) (Friendly, J.). That obligation persists today. See Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 578 (2d Cir. 2000); Town of Roxbury v. Rodrigues, 716 N.Y.S.2d 814, 815 (3d Dep't 2000) ("[T]he term ['best efforts'] requires that plaintiffs pursue all reasonable methods for satisfying the necessary contingencies . . . ." (quotation marks omitted)); see

---

[5] On appeal, in connection with his breach of contract claim, Cruz points only to FXDD's failure to use its best efforts to effect customer trades, as required by the Agreement. He has abandoned any argument that FXDD violated other alleged provisions of the Agreement. See LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995).

13

also Kroboth v. Brent, 625 N.Y.S.2d 748, 749 (3d Dep't 1995) ("'[B]est efforts' requires more than 'good faith', which is an implied covenant in all contracts . . . .").

Some New York state courts have required "clear guidelines against which to measure" a party's efforts before they will enforce a "best efforts" clause. Strauss Paper Co. v. RSA Exec. Search, Inc., 688 N.Y.S.2d 641, 642 (2d Dep't 1999); see Timberline Dev. LLC v. Kronman, 702 N.Y.S.2d 237, 241 (1st Dep't 2000). However, the New York Court of Appeals has not endorsed this requirement. See, e.g., Van Valkenburgh, Nooger & Neville v. Hayden Publ'g Co., 30 N.Y.2d 34, 46-47 (1972) (affirming a decision that defendant failed to use its best efforts and thus breached its contract without discussing whether there were guidelines in the agreement). Using a somewhat less stringent requirement, one New York state court recently held that a "best efforts" clause is enforceable when "external standards or circumstances impart a reasonable degree of certainty to the meaning of the phrase best efforts," Maestro W. Chelsea SPE LLC v. Pradera Realty Inc., 954 N.Y.S.2d 819, 825 (Sup. Ct. 2012) (quotation marks omitted). Regardless of the standard, the "best efforts" clause in the Agreement clearly obligated FXDD to attempt in good faith at least to execute customer orders at the specified level. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009) (discussing interpretation of unambiguous contracts). To be sure, the Agreement warns that "due to market conditions or other circumstances, FXDD may be unable to execute [an] Order at the Market or specified level," and it disclaims liability "for failure to execute such orders," J.A. 67 (emphasis added), as well as for delays in order transmission due to disruption, market conditions, malfunction of communications facilities or its own negligence. Id. Through those warnings along with a variety of other qualifications,

14

FXDD warned its customers that they might not be able to execute trades at the specified level even if FXDD acted in good faith. But the Agreement did not warn FXDD's customers that it might not act in good faith at all, which is the thrust of Cruz's amended complaint.[6]

The amended complaint alleges that FXDD failed to act in good faith and, to the contrary, intentionally delayed trades or caused them to fail in order to enrich itself at the expense of its customers. Because these alleged practices are incompatible with a promise to execute orders on a "best-efforts basis," we vacate the District Court's dismissal of the breach of contract claim.

D. The Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Cruz also claims that FXDD breached the implied covenant of good faith and fair dealing. The District Court correctly dismissed this claim. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks omitted). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Id. at 81. Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same

---

[6] To the extent FXDD suggests that we might view the Agreement's disclaimers as also applying to bad faith conduct, we disagree for reasons rooted in New York law. See Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 385 (1983) ("[A]n exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.").

15

1   facts, the latter claim should be dismissed as redundant. See L-7 Designs, Inc. v. Old

2   Navy, LLC, 647 F.3d 419, 434 n.17 (2d Cir. 2011). Here, Cruz's claim for breach of the

3   implied covenant of good faith and fair dealing and his breach of contract claim clearly

4   rest on the same alleged deceptive practices, see J.A. 58, 60, so the claims are redundant.

5       E.  Dismissal with Prejudice

6       Cruz argues that the District Court should have allowed him to amend his

7   complaint after it was dismissed. We review for abuse of discretion a district court's

8   decision whether dismissal of a complaint should be with prejudice. See Grain Traders,

9   Inc. v. Citibank, N.A., 160 F.3d 97, 106 (2d Cir. 1998). Setting aside Cruz's General

10  Business Law claims and breach of contract claim, as to which we vacate the District

11  Court's judgment, we conclude that the District Court did not abuse its discretion when it

12  dismissed Cruz's remaining claims with prejudice. "While leave to amend under the

13  Federal Rules of Civil Procedure is 'freely granted,' see Fed. R. Civ. P. 15(a), no court

14  can be said to have erred in failing to grant a request that was not made." Gallop v.

15  Cheney, 642 F.3d 364, 369 (2d Cir. 2011); see Porat v. Lincoln Towers Cmty. Ass'n, 464

16  F.3d 274, 276 (2d Cir. 2006). Cruz acknowledges that he never made a formal motion to

17  amend, and his memorandum to the District Court in opposition to FXDD's motion to

18  dismiss failed to request that the amended complaint be dismissed without prejudice. Nor

19  does Cruz appear to have advised the District Court of any proposed revisions.

20  Accordingly, the District Court did not abuse its discretion by dismissing the

21  insufficiently pleaded claims with prejudice.

22

23

1 **CONCLUSION**

2 For the foregoing reasons, we AFFIRM the judgment of the District Court as to the
3 RICO claim and the claim for breach of the implied covenant of good faith and fair
4 dealing, VACATE the judgment as to the breach of contract claim and the claims under
5 New York General Business Law §§ 349 and 350, and REMAND the case for further
6 proceedings.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*[signature: Catherine O'Hagan Wolfe]*